```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


JAMES MICHAEL SOUTHWORTH,       :
    Plaintiff,                  :
                                :
v.                              : Civil No. 3:19CV346(AWT)
                                :
ANDREW SAUL, COMMISSIONER OF    :
SOCIAL SECURITY,                :
    Defendant.                  :
```

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), plaintiff James Michael Southworth appeals the April 24, 2018 final decision of the Administrative Law Judge ("ALJ") denying the plaintiff's applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI").

The plaintiff filed a Motion for Judgment on the Pleadings requesting remand. He challenges the ALJ's Residual Functional Capacity ("RFC") determination, specifically, that the plaintiff can sustain focus for simple tasks. As to this issue, the plaintiff contends that the ALJ erred by failing to admit and consider the parental written statement and timeline; to consider evidence predating the plaintiff's 18th birthday, November 2, 2007; and to provide him with procedural due process

by admitting into the administrative record evidence predating November 2007 but not considering it.  See Pl.'s Mem. to Remand (ECF No. 14-1) at 13-19.

The defendant filed a motion for an order affirming the ALJ's decision, maintaining that "the [ALJ]'s findings are supported by substantial evidence" and reflect "correct application of legal principles"; that the ALJ's decision is based on a complete record or alternatively, that failure to admit or consider the evidence was harmless error; that the relevant period under either the DIB or the SSI application started January 1, 2015; and that the plaintiff cites no authority for his procedural due process challenge.  Def.'s Mot. to Affirm (ECF No. 16) at 1; see also Def.'s Mem. to Affirm (ECF No. 16-1) at 4-10.

For the reasons set forth below, the court concludes that any error in the application of the legal standard would be harmless, that the challenged findings are supported by substantial evidence, and that the ALJ's final decision should be affirmed.

I. **Legal Standard**

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function."  Zambrana v. Califano, 651 F.2d 842, 844

(2d Cir. 1981).  The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

## II. RFC

Here, the ALJ's RFC determination reads:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should never climb ladders, ropes, or scaffolds; he may occasionally climb stairs or ramps, balance, stoop, crouch, kneel or crawl; **he can perform simple, routine, repetitive tasks**; he can sustain concentration, persistence and pace for two-hour segments; only occasional interaction with coworkers and the public; limited to work with little or no changes in duties and routines; no work requiring independent judgment making (no setting duties/schedules for others, no responsibility for the safety of others).

R. at 21 (emphasis added).

The relevant rationale reads:

> **The undersigned also accepts that the claimant has some limitations due to ADD. The residual functional capacity has the finding for performing short and simple tasks** with limited social interaction. To address any stress triggers from changing or challenging work demands, the residual functional capacity has the limitations to work with little or no changes in duties or routines as well as the restriction against independent judgment making. **At the hearing, the claimant**

3

> **indicated that he has limited ability to sustain focus for work tasks.** He also relayed that he has some problems with reading comprehension. The undersigned finds **these allegations** to **underestimate the claimant's functional abilities.** As an initial matter, the undersigned notes that there are **no findings for loss of cognitive ability** such that the claimant could not perform at least short and simple tasks.  At the consultative examination, the claimant displayed **memory within the normal range.** Despite some mild difficulty with judgment, the claimant had **average intellectual functioning and adequate working memory** (Ex. 6F, Pg. 4). Some of the claimant's overseas travel also suggests that he retains sufficient ability to work within the scope of the residual functional capacity. The claimant had traveled to Peru on more than one occasion. One trip was for the purpose of learning about organic agriculture[e] (Ex. 1F, Pg. 1). This is not the hallmark of an individual with persistent reading limitations or restrictions in sustaining focus for simple tasks.

R. at 22-23 (emphasis added).

### III. Discussion

The plaintiff suggests that the ALJ lacked substantial evidence to support the finding that plaintiff could perform short and simple tasks; the plaintiff also offers an alternative factual interpretation for his travel to Peru:

> The parents' statement and timeline is **relevant** and talks specifically about the plaintiff's obsessive pursuits of a "cure". . . . When the ALJ is conducting his symptom evaluation for ADD, he refers to **just one functional activity** of plaintiff to support his finding that the plaintiff's ADD symptomatology is not severe enough to interfere with plaintiff's ability to sustain focus for simple tasks. [Tr. 23]. That activity is plaintiff's **travel to Peru**, which the ALJ believes was to study organic farming, based on an endocrinologist's statement. The statement and timeline, plaintiff believes, **suggest a different story**. Indeed, **in a** third party statement, the mother refers to the plaintiff

4

>  living in a "hut" for those years in his "obsession" about healing himself. [Tr. 287]. **The failure to admit that statement, and to consider that statement** when evaluating the plaintiff's statements about the intensity and persistence and functional impairment from the symptoms **was error.**

Pl.'s Mem. to Remand at 14-16 (emphasis added).

The plaintiff also contends that the ALJ erred by not considering evidence which predates 2007, citing the ALJ's decision, which reads:

> As an initial matter, the undersigned notes that this case presents a **limited timeframe for consideration**. While the claimant alleged an onset date of August 1, 1995 (at age 5), **this is a claim for disability benefits under the adult standard**. Moreover, for the purposes of the Title II application, the claimant has a date first insured of January 1, 2015 and a date last insured of March 31, 2016 (Ex. 2D). **The undersigned will consider the evidence from November 2, 2007 (the claimant's 18th birthday) for this decision.**

R. at 22 (emphasis added). The plaintiff suggests that childhood evidence was required because "the ALJ had no evidence on which to base his findings except speculation based on plaintiff's IQ and high school diploma, and a trip to Peru." Pl.'s Mem. to Remand at 18.

Finally, The plaintiff suggests that the ALJ erred by admitting into the administrative record evidence which predates November 2, 2007 but not considering it explicitly and that the plaintiff was harmed because a "specific declination to admit those records" would have given "the plaintiff notice of the exclusion[,] . . . an opportunity to respond and, **at least**, make

5

an offer of proof."  Pl.'s Mem. to Remand at 18 (emphasis added).

### A. Substantial Evidence

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a mere scintilla or touch of proof here and there in the record."  Williams, 859 F.2d at 258.  Absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g)("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Thus, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, **even where there may also be substantial evidence to support the plaintiff's contrary position**.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982) (emphasis added).

Here, the ALJ supported the conclusion that the plaintiff could perform short and simple tasks with medical evidence: a consultative examiner found normal memory and average

6

intellectual functioning and there were no findings of loss of cognitive ability to perform at least short and simple tasks.

The ALJ also supports the conclusion with other evidence: the plaintiff had traveled to Peru to learn organic farming, which is not a hallmark of an individual with persistent restrictions in sustaining focus for simple tasks.  Dr. Debra Schussheim's treatment notes reflect, under the heading of "History of Present Illness", that the "patient was in Peru learning about organic agriculture." See R. at 22 (citing Ex. 1F at 1 (R. at 354)).  The plaintiff testified that he had traveled to more places than he could count, including to Czech Republic, Iceland, London, North Carolina, California, Winston, Vermont, Boston, and Cambridge.  See R. at 75-76.  When asked whether the purpose of his travel to Peru was to learn organic farming, the plaintiff responded that it happened elsewhere. See R. at 66-67 ("I did that when I was in Iceland, while I was doing a little better like eight years ago" (which is within the relevant time period)).

Thus, the ALJ supported the conclusion that there was enough residual function to perform short and simple tasks with more than just one functional activity and more than speculation based on the plaintiff's IQ and high school diploma.  Even if the court assumes that the plaintiff has presented (or could present) substantial evidence to support contrary findings, the

7

ALJ's conclusion must still be affirmed because the ALJ's conclusion is also supported by substantial evidence even without a finding that the trip to Peru was for the purpose of learning organic farming.  See Schauer, 675 F.2d at 57.

### B. The Admission and Consideration of Parents' Written Statement and Timeline

In determining when there is "inadequate development of the record, the issue is whether the missing evidence is significant." Santiago v. Astrue, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37-38 (2d Cir. 1996)).  "[T]he burden of showing that an error is **harmful** normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009)(emphasis added).  The ALJ "does not have to state on the record every reason justifying a decision." Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012).  "'Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted.'" Id. (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).  In addition, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Id.

> [T]he ALJ has "the **discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence**." McLaughlin v. Secretary of Health, Ed. and Welfare, 612 F.2d 701, 704 (2d Cir. 1980) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). Credibility findings of an ALJ are **entitled to**

8

**great deference and therefore can be reversed only if they are "patently unreasonable."** Lennon v. Waterfront Transport, 20 F.3d 658, 661 (5th Cir. 1994).

Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997)(emphasis added).

Here, the plaintiff chose not to submit the statement and timeline in its entirety to either the Appeals Council or this court for an independent determination of its relevance as a whole, despite being represented by counsel. Instead, the plaintiff referred to the parents' third-party function report put into evidence as Exhibit 5E, thus conceding that the evidence is already a part of the record. See R. at 287-94. Thus, even if the court assumed that the ALJ erred by not admitting the statement and the timeline, evidence of obsessive pursuit of a cure is repetitive and, consequently, nonessential to both the challenged finding and the ultimate disability determination. See Section III.A. Therefore, the plaintiff's motion for remand on this ground is being denied.

**C. Evidence Predating November 2, 2007**

Here, the plaintiff concedes that he "was first insured January 1, 2015" and "last insured . . . March 31, 2016." R. at 39. Although the plaintiff alleged disability before age 22, he did so to preserve a disabled adult child claim while awaiting the requisite parental life event of retirement or disability and acknowledged that for both claims, as filed, the relevant

9

period would begin at age 18.  See R. at 242-50 (plaintiff's SSI application filed under adult standard); 52-55 (agreeing that SSI and DIB claims were filed as adult disability claims, that the decision would be based on evidence "from age 18 onwards", and that "it is a terrible waste of everybody's time to try to prove what happened when he was . . . five").  Moreover, the plaintiff offers no argument that the evidence in the records prior to 2007 could have changed the outcome of the case, given the benefits period at issue.  Therefore, the plaintiff's motion for remand on this issue is being denied.

### D. Procedural Due Process

As noted by the defendant, the plaintiff cites no authority for the proposition that admitting evidence into the administrative record but failing to consider it explicitly was in derogation of the obligation to provide a full and fair hearing consistent with procedural due process.  It is apparent from a review of the transcript that the ALJ "gave Plaintiff every benefit of the doubt" and then concluded that such evidence was not material.  Def.'s Mot. to Affirm at 10.  More importantly, the plaintiff does not show how excluding the evidence would have changed the outcome of the case given that the plaintiff filed both applications under the adult standard and the ALJ's finding is supported by substantial evidence.  See Sections III.A. and C.

**IV. CONCLUSION**

For the reasons set forth above, the plaintiff's Motion for Judgment on the Pleadings (ECF No. [14]) is hereby DENIED, and the Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. [16]) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.

Dated this 30th day of October 2020, at Hartford, Connecticut.

                                      /s/AWT
                              Alvin W. Thompson
                       United States District Judge